## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:12-CR-58** |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| **FAREED RAY**, | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Presently before the court is convicted defendant Fareed Ray's ("Ray")

motion (Doc. 380) for a new trial pursuant to Federal Rule of Criminal Procedure

33, alleging that the interest of justice requires a new trial due to newly discovered

evidence. FED. R. CRIM. P. 33.  Ray requests that the court vacate the judgment

against him and grant a new trial because the government used evidence at his trial

that is tainted by the misconduct of Officer Tyson Baker ("Baker").  (See Doc. 381).

The government argues that sufficient evidence exists to convict Ray on the

indicted charges independent of the evidence tainted by Baker.  (See Doc. 420).  For

the reasons that follow, the court will deny the motion.

## I.    Factual Background & Procedural History

On February 29, 2012, an indictment (Doc. 1) was filed charging Ray, Azim

Showell ("Showell"), Darrin Matthis, Dawan Maynard, and Josh Breon ("Breon"),

with inter alia, conspiracy to distribute heroin, cocaine, and cocaine base in

violation of 21 U.S.C. § 846.  A superseding indictment (Doc. 107) was filed February

20, 2013, charging Ray with conspiracy to distribute heroin, cocaine, and cocaine

base in violation of 21 U.S.C. § 846 (Count I); possession with intent to distribute

heroin, cocaine, and cocaine base from August 2011 to January 9, 2011, January 22,

2012 to February 2, 2012, and on February 2, 2012 in violation of 21 U.S.C.

§ 841(a)(1) and 18 U.S.C. § 2 (Counts II, IV, VI); carrying a firearm in furtherance of

a drug trafficking offense in December 2011 and on January 28, 2012 in violation of

18 U.S.C. § 924(c) (Counts III, V); and conspiracy to possess a firearm in furtherance

of the distribution of heroin, cocaine, and cocaine base in violation of 18 U.S.C.

§ 924(o) (Count VII).  Only Showell and Ray proceeded to trial, as the other three

defendants pled guilty.  (See Docs. 101, 204, 303).  Showell and Ray's trial

commenced with jury selection on May 20, 2014 and trial proceedings spanned

approximately four days.  (See Docs. 306-08, 371).

During its case-in-chief, the government offered evidence implicating Ray in

a widespread operation to sell heroin, cocaine, and cocaine base throughout the

Harrisburg and State College area.  This operation came to light when police pulled

over Michael Bobb ("Bobb") for speeding on February 2, 2012 and discovered stolen

guns in his vehicle.  (Doc. 306 at 16:14-22:5, 62:2-6; Doc. 387-2 at 2).  He informed

local law enforcement that he intended to trade these guns for drugs.  (Doc. 306 at

62:24-63:5, 86:25-90:22).  He agreed to cooperate with local law enforcement, who

conducted a sting operation later that evening.  (Doc. 307 at 7:8-14).  Police arrested

Ray as a result of their undercover activities with Bobb.  (See id. at 61:17-21).  Ray

was in possession of crack cocaine at the time of his arrest.  (Id. at 48:3-9, 68:4-13).

The government produced three witnesses who identified Ray as their source

of heroin or cocaine between approximately November 2011 and February 2012:

Bobb, James Lansberry ("Lansberry"), and Breon.  (See Docs. 306-08).  Bobb

attested that he met Ray in November of 2011 through Breon and bought drugs

2

from Ray until his arrest on February 2, 2012.  (Doc. 306 at 35:25-43:5, 46:3-47:25,

50:23-51:3).  Lansberry testified that he met Ray through Breon towards the end of

2011 and he continued to buy drugs from Ray until February 2012.  (Doc. 307 at

138:3-17, 150:19-25).  Breon agreed with this time frame, indicating that he met Ray

to buy drugs from him in the summer of 2011, that he introduced Bobb to Ray, and

that Lansberry was also involved with Ray.  (Id. at 188:19-23, 192:12-15, 193:8-17,

194:14-24).

The government introduced physical evidence connecting Ray to drug

trafficking.  When police arrested Ray on February 2, 2012, an officer strip searched

him and found crack cocaine.  (Id. at 46:3-48:9, 66:21-69:1).  The government also

introduced evidence collected after a traffic stop of Showell on February 14, 2012.

(Doc. 308 at 44:2-46:13).  Officer William Buzzard described his participation in this

traffic stop with Officer Baker, indicating that they identified marijuana shake in

the vehicle, asked for consent to search the vehicle, and then were unable to search

the trunk of the car because consent was not given.  (Id. at 30:14-38:20).  Officers

Buzzard and Baker then impounded the vehicle to obtain a search warrant.  (Id. at

36:1-21).  Officer Michael Bennage testified that he executed a search warrant after

the vehicle was impounded and found a stolen gun and heroin labeled "Oriental

Pleasure."  (Id. at 41:19-42:13).

After a four-day trial, the jury convicted Ray of Counts I-VII, *inter alia,*

conspiracy to distribute heroin, cocaine, and cocaine base in violation of 21 U.S.C.

§ 846.  At sentencing, the government withdrew Count III.  (Doc. 381 at 2 n.1;

Doc. 387-2 at 11 n.6).  The court sentenced Ray on March 27, 2015 to a total of

248 months:  188 months on each of Counts I, II, IV, VI, VII, all to be served

concurrently and 60 months on Count V to run consecutively to all other terms of

imprisonment.  (Doc. 356).  Ray filed a notice of appeal to the Third Circuit Court of

Appeals on April 9, 2015.  (Doc. 362).

On December 23, 2015 and January 4, 2016, the government provided Ray's

defense counsel with <u>Brady</u> disclosures.  (Doc. 381 at 2-4; Doc. 387-2 at 15-16).  The

disclosures contained newly discovered evidence of an ongoing investigation of

Baker and his possible tampering with evidence procured from the Showell traffic

stop.  (Doc. 381 at 2-4, 7; Doc. 387-2 at 12-16).  In March 2015, Officer Bennage met

with the FBI and the Pennsylvania Office of Attorney General to discuss Baker

possessing a large amount of money Bennage believed Baker stole from a drug

dealer he pulled over.  (Doc. 387-2 at 14).  Bennage also believed that Baker

conducted an improper search after the traffic stop of Showell on February 14,

2012, possibly to steal money.  (<u>Id.</u>)  The FBI conducted an undercover investigation

of Baker and arrested him in December 2015.  (<u>Id.</u> at 14-15).  Baker confessed to

stealing money and valuables on two other occasions, but not after the Showell

stop.  (<u>Id.</u> at 15).

A grand jury returned an indictment against Baker charging him with

removing property to prevent seizure by the government, specifically $2,000 on

November 21, 2015 and $3,000 on December 16, 2015, in violation of 18 U.S.C. § 2232

(Counts I, II); corruptly obstructing an official proceeding by taking the

aforementioned amounts of money and a surveillance camera, as well as falsifying

reports in violation of 18 U.S.C. § 1512(c)(2) (Counts III, IV); falsifying records to

conceal the theft of $2,000 on November 21, 2015 in violation of 18 U.S.C. §§ 2, 1519 (Count V); falsifying records to conceal the theft of approximately $2,000 and a surveillance camera on December 16, 2015 in violation of 18 U.S.C. § 1519 (Count VI); stealing $3,000 from the Federal Bureau of Investigation on December 16, 2015 in violation of 18 U.S.C. § 641 (Count VII); and making false statements as to the December 16, 2015 stop where Baker stole $3,000 and a surveillance camera in violation of 18 U.S.C. § 1001 (Count VIII). United States v. Baker, No. 1:16-CR-18, Doc. 25 (M.D. Pa. Jan. 27, 2016). The United States Attorney filed superseding information, charging Baker with knowingly counseling and procuring the theft of $2,000 from the United States on November 21, 2015 in violation of 18 U.S.C. §§ 2, 641 (Count I). Id. at Doc. 68. Baker pled guilty to Count VII of the indictment and Count I of the superseding information. Id. at Doc. 77.

Upon receipt of the Brady disclosures, Ray moved for a new trial pursuant to Federal Rule of Criminal Procedure 33 on the grounds that the jury's verdict was based on tainted evidence. (Doc. 380). The Third Circuit stayed Ray's appeal pending a decision by the court on the instant motion. United States v. Ray, No. 15-1880, Doc. 003112263865 (3d Cir. April 14, 2016). The government opposes Ray's motion. (Doc. 387). The court ordered supplementary briefing on the perceived impact the tainted evidence had on Ray's conviction, (Doc. 410), and the parties timely filed supplemental briefs. (Docs. 419-21). The motion is now ripe for disposition.

## II.    <u>Legal Standard</u>

Federal Rule of Criminal Procedure 33(a) provides that, upon a defendant's motion for new trial, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a).  The defendant "bears the burden of persuading the trial court that the interest of justice requires the grant of a new trial." <u>United States v. Hammer</u>, 25 F. Supp. 2d 518, 534 (M.D. Pa. 1998); <u>see also</u> <u>United States v. Amirnazmi</u>, 648 F. Supp. 2d 718, 719 (E.D. Pa. 2009).  However, the court grants Rule 33 motions "sparingly and only in exceptional cases."  <u>United States v. Silveus</u>, 542 F.3d 993, 1005 (3d Cir. 2008) (quoting <u>Gov't of V.I. v. Derricks</u>, 810 F.2d 50, 55 (3d Cir. 1987)).  Exceptional cases include those in which trial errors "so infected the jury's deliberations that they had a substantial influence on the outcome of the trial."  <u>United States v. Thorton</u>, 1 F.3d 149, 156 (3d Cir. 1993) (citation omitted).  The decision to grant or deny a new trial is within the sound discretion of the district court.  <u>United States v. Vitillo</u>, 490 F.3d 314, 325 (3d Cir. 2007).

## III.    <u>Discussion</u>

Ray asseverates that Officer Baker's actions so tainted crucial evidence as to compel *vacatur* of his conviction and mandate a new trial.  Ray argues that new evidence of Baker's illicit conduct merits a new trial because it gravely impacts the sufficiency of the evidence the government offered at trial, particularly for the first conspiracy charge (Count I) but also regarding his entire conviction.

The Third Circuit Court of Appeals employs a five factor test for determining whether or not newly discovered evidence warrants a new trial:  the evidence must

be (1) newly discovered, (2) diligently pursued, (3) more than merely cumulative or impeaching, (4) material to the issues involved, and (5) of such nature that its introduced at a new trial would "probably" produce an acquittal.  United States v. Schneider, 801 F.3d 186, 201-02 (3d Cir. 2015) (quoting United States v. Quiles, 618 F.3d 383, 388-89 (3d Cir. 2010)).  The defendant has the burden of proving each of these requirements, and if even one is not satisfied, the court may not grant a new trial.  See United States v. Kelly, 539 F.3d 172, 182 (3d Cir. 2008); United States v. Cimera, 459 F.3d 452, 458 (3d Cir. 2006).  The court will measure Ray's claims against this standard seriatim.

### A.    Conspiracy

Ray advances two sequential arguments in support of a new trial on the charge of conspiracy to distribute heroin, cocaine, and cocaine base.  He avers that newly discovered evidence of Baker's prohibited actions could be used to exclude evidence obtained from Baker's traffic stop of Showell or, alternatively, could impact the weight a jury would give this evidence.  (Doc. 381 at 7-10).  Ray contends that the use of the newly discovered evidence would thus result in an acquittal because the tainted evidence is the only evidence forming a conspiratorial relationship between Ray and Showell.  (Id. at 8, 10-11).

### 1.    *Newly Discovered and Diligently Pursued*

Ray claims that evidence of Baker's improper search is newly discovered evidence that could not have been discovered by Ray during the trial.  (Id. at 7). The government agrees that the evidence is newly discovered but submits that Ray

has the burden of proving that he acted with diligence in pursuing the new evidence. (Doc. 387-3 at 17-19).

In the case *sub judice*, Ray adequately demonstrates that the evidence is "new," as the FBI arrested Baker on December 18, 2015, months after Ray's trial. (Doc. 381 at 7; Doc. 387-2 at 15). Ray also meets his burden for the second factor, as the undercover investigation into Baker's activities did not begin until after his trial. (Doc. 381 at 7; Doc. 387-2 at 14). No amount of diligence on Ray's part could have discovered Baker's conduct. The government contends that Showell had reason to believe that Baker had stolen money from Showell during the February 14, 2012 stop. (Doc. 387-3 at 17-18; Doc. 387-5 at 13-16). But the court may not impute Showell's knowledge to Ray, especially because Showell did not raise this issue at trial. (Doc. 387-3 at 17-19). The court deems the first two factors of the Schneider test satisfied.

## 2. *Material and More Than Merely Impeaching*

Ray posits that the newly discovered evidence is not merely cumulative or impeaching because it would result in the exclusion of evidence from the Showell traffic stop, satisfying the third prong of the Schneider inquiry. (Doc. 381 at 7; Doc. 421 at 9). The government asserts that Ray cannot constitutionally challenge the tainted evidence, rendering it admissible at trial, and that new evidence of Baker's misconduct could only be used to impeach government witnesses. (Doc. 387-3 at 19-20; Doc. 420 at 9). The materiality of the newly discovered evidence under the fourth prong is also contested. (Doc. 281 at 8; Doc. 387-3 at 21).

8

An individual cannot constitutionally challenge the admissibility of evidence secured by a search conducted on a third person's property.  See Rakas v. Illinois, 439 U.S. 128, 133-34 (1978).  Alternatively, an individual may advance an evidentiary challenge when there is no constitutional challenge available, such as an objection to the authenticity of evidence.  FED. R. EVID. 901.  Questioning the authentication of evidence by scrutinizing chain of custody requires a showing of actual tampering; otherwise the trial court may presume that public officials correctly handled evidence.  See United States v. Dent, 149 F.3d 180, 188 (3d Cir. 1998).  Gaps in the chain of custody could lead to an exclusion of evidence or a question of weight for the jury.  See United Sates v. Rawlins, 606 F.3d 73, 82-83 (3d Cir. 2010).

Although Ray cannot raise a constitutional challenge to exclude evidence from the Showell traffic stop, (Doc. 381 at 9; Doc. 387-3 at 22-23; Doc. 419 at 6), he argues that heroin acquired thereby would be inadmissible at a new trial based upon chain of custody and credibility concerns.  (Doc. 381 at 9; Doc. 419 at 6-7).  If Ray used evidence of Baker's improper search, it would have value to the defense beyond mere impeachment.

The government contends that the newly discovered evidence only suggests that Baker "stole some money," and that nothing supports the assertion that heroin and guns found after the Showell traffic stop were tampered with.  (Doc. 420 at 9).  The government additionally claims that several witnesses established that evidence from the Showell traffic stop is trustworthy and admissible.  (Id.)  But these arguments are unavailing in the face of Baker's clear misconduct as described by Officer Bennage.  (Doc. 387-2 at 14).  Money, heroin, and guns found after the

9

Showell traffic stop were all in the trunk possibly accessed by Baker without a search warrant, a fact the government ignores.  (Id. at 14; 387-5 at 13-16, 20).  Evidence that money was missing from the trunk would constitute clear and convincing proof of tampering.  Hence, a trial court might exclude the evidence from the Showell traffic stop based on Baker's conduct.  Even if the court did not exclude the evidence owing to the serious gap in the chain of custody, the weight of the Showell traffic stop evidence would be brought into question.  Rawlins, 606 F.3d at 82.  That this could impact the decision of a reasonable jury is undeniable.  Either result based on inclusion of the new evidence would go beyond mere impeachment.

Exclusion of evidence or questions as to its weight would be material to Ray's case, as the government used the Showell traffic stop evidence to support the existence of a conspiracy.  (Doc. 308 at 115:16-116:22).  Consequently, the court finds that Ray satisfies requirements three and four under the five-factor Schneider test.

### 3.    *Probability of Acquittal at New Trial*

The final requirement of the Schneider test is a determination that newly discovered evidence would "probably" result in an acquittal at a new trial.  Schneider, 801 F.3d at 202.  Ray argues that the evidence at trial, without the physical evidence from the Showell traffic stop, demonstrated that Showell and Ray never had an agreement to sell drugs.  (Doc. 381 at 10).  The government contends that without the evidence from the Showell stop, a jury would nevertheless convict Ray of conspiracy.  (Doc. 420 at 10).

In the Third Circuit, a conviction may be sustained for conspiring with an indicted or unindicted individual.  United States v. Meyers, 484 F.2d 113, 118

(3d Cir. 1973) (quoting <u>United States v. Gordon</u>, 242 F.2d 122, 125 (3d Cir. 1957)).

The elements of a drug distribution conspiracy are: "(1) a shared unity of purpose,

(2) an intent to achieve a common goal, and (3) an agreement to work together

toward the goal." <u>United States v. Iglesias</u>, 535 F.3d 150, 156 (3d Cir. 2008) (quoting

<u>United States v. Bobb</u>, 471 F.3d 491, 494 (3d Cir. 2006)).  The government may prove

these elements through circumstantial evidence.  <u>United States v. McGlory</u>, 968

F.2d 309, 321-22 (3d Cir. 1992) (citing <u>United States v. Kapp</u>, 781 F.2d 1008, 1010

(3d Cir. 1986)).

A simple "buyer-seller" relationship without any further understanding

beyond the sales agreement is insufficient to establish a drug conspiracy.  <u>United</u>

<u>States v. Gibbs</u>, 190 F.3d 188, 197 (3d Cir. 1999).  However, an occasional supplier

may be shown to be a part of a conspiracy by evidence demonstrating knowledge

that he or she was part of a larger operation.  <u>United States v. Price</u>, 13 F.3d 711, 728

(3d Cir. 1994).  The mere fact that a supplier knows that his or her buyer resells

drugs to others is not sufficient to demonstrate a conspiracy.  <u>United States v.</u>

<u>Pressler</u>, 256 F.3d 144, 153 (3d Cir. 2001).

The court should consider factors such as "the length of affiliation between

the defendant and the conspiracy; whether there is an established method of

payment; the extent to which transactions are standardized; and whether there is a

demonstrated level of mutual trust." <u>Gibbs</u>, 190 F.3d at 199.  Fronting or buying

drugs on credit may demonstrate a mutual level of trust.  <u>United States v. Alicea</u>,

496 F. App'x 192, 195 (3d Cir. 2012) (nonprecedential); <u>Iglesias</u>, 535 F.3d at 156;

<u>Gibbs</u>, 190 F.3d at 200.  The sale of large amounts of drugs also indicates a level of

mutual trust.  <u>Alicea</u>, 496 F. App'x at 195; <u>Gibbs</u>, 190 F.3d at 199.  The presence of

one or more of these factors furthers the inference that the buyer knew he was part

of a larger operation and may be ruled a co-conspirator.  <u>Gibbs,</u> 190 F.3d at 200.

### a.   **Conspiracy Between Ray and Showell**

The court agrees with Ray that without the tainted evidence, proof of a

conspiracy between Ray and Showell is tenuous.  Bobb and Lansberry testified that

Showell was Ray's supplier, but no witness confirmed a relationship beyond that of

a buyer and a seller.  (Doc. 306 at 44:15-45:23; Doc. 307 at 208:1-210:2, 145:11-148:2;

Doc. 421 at 9).  Such evidence, without more, cannot sustain a conspiracy

conviction.  <u>See</u> <u>Pressler</u>, 256 F.3d at 153; <u>Gibbs,</u> 190 F.3d at 199.

The heroin obtained from the Showell traffic stop served as the corroborative

link between Ray and Showell.  Officer Bennage testified that he found heroin

stamped "Oriental Pleasure" in the rental car where Showell was a passenger.

(Doc. 308 at 42:3-13).  Bobb and Breon testified that they obtained heroin with this

same stamp from Ray and Showell.  (Doc. 306 at 48:1-49:8; Doc. 307 at 197:5-15,

206:18-20, 209:23-210:2).  It is reasonable to conclude that the jury relied on this

corroborating physical evidence to infer that Ray and Showell had an agreement to

deal the same type of heroin.  The court concludes that excluding the tainted

evidence likely weakens the conspiratorial link between Ray and Showell.

### b.   **Conspiracy Between Ray, Bobb, and Breon**

But this finding does not end the court's inquiry, because the government's

conspiracy case implicates more parties than just Ray and Showell.  The

government contended at trial that Ray and Showell "as well as the other people

you heard, Michael Bobb and Josh Breon, and to some extent, even James Lansberry, were all involved in a conspiracy working towards the goal of selling drugs[.]"  (Doc. 308 at 77:24-78:3).  Ray, however, focuses only on the government's evidence tying Ray to Showell, ignoring the abundance of evidence supporting a broader conspiracy offered during Ray and Showell's trial.  (Doc. 381 at 10-11; Doc. 421 at 8-9).  The government posits that a jury retrying Ray's case without the evidence from the Showell traffic stop would still convict Ray of conspiracy based on evidence from multiple other witnesses, several of which were Ray's co-conspirators.  (Doc. 420 at 11, 20, 23).  The court agrees.

That Bobb was unindicted, and Breon chose to plead guilty instead of stand trial, does not impact the court's conclusion.  Co-conspirators do not need to be tried with a defendant for a jury to convict that defendant of conspiracy.  Meyers, 484 F.2d at 118.  Bobb and Breon both knew that Ray sold drugs to other individuals.  (Doc. 306 at 40:12-41:7, 45:1-25; Doc. 307 at 193:8-10).  Alone, knowledge of a drug network is not sufficient proof of a conspiracy, see Pressler, 256 F.3d at 152–53, thus courts must use the Gibbs factors, identified *supra*, to determine if sufficient corroborating evidence of a conspiracy exists.  See Gibbs, 190 F.3d at 199.

Application of these factors *sub judice* confirms a conspiratorial relationship between Ray, Bobb, and Breon.  Bobb and Breon were both associated with Ray for several months.  (Doc. 306 at 36:21-24, 49:15-51:1; Doc. 307 at 190:1-16, 196:13-15).  During their association, Bobb and Breon were drug couriers for Ray, paid by him in drugs.  (Doc. 306 at 40:12-41:7; Doc. 307 at 193:8-10, 194:23-195:8).  Ray sold large amounts of drugs to both Bobb and Breon, amounts implying more than

recreational use.  (Doc. 306 at 71:1-24; Doc. 307 at 207:17-208:6).  The trio developed

a level of mutual trust over time.  Bobb testified that Ray began to trust him after

Bobb couriered drugs for Ray, at which point Ray began to give Bobb drugs to sell

on his own.  (Doc. 306 at 38:5-7, 42:5-21).  Ray dictated the price and Bobb gave Ray

his share of the profits.  (Id. at 42:17-21).  Breon testified that he would drive for Ray

to downplay suspicion and that Breon carried drugs between cities for Ray.

(Doc. 307 at 192:8-193:5).  Ray then began to trust Breon more and fronted him

drugs on credit.  (Id. at 195:11-196:18).  Additionally, Bobb and Breon advised Ray

that he should sell heroin in State College, testifying that they told Ray that there

was money to be made in that area.  (Doc. 306 at 39:3-8; Doc. 307 at 192:8-15).

Both Bobb and Breon corroborated each other's stories.  (Doc. 306 at 40:20-41:23;

Doc. 307 at 194:23-195:8).

   Fronting drugs on credit is a tacit agreement to cooperate, as Ray would not

profit if Bobb and Breon did not sell the drugs and return a profit to him.  See

Iglesias, 535 F.3d at 156; Gibbs, 190 F.3d at 198.  Moreover, the discussion of which

drugs to sell, and where, indicates a level of planning and investment in the drug

operation by all three men.  Coupled with the men's knowledge of drugs being sold

to other individuals and their mutual level of trust, it is clear that the three men

"put their heads together to figure out planning, organization, and ways to conceal

their activities."  Gibbs, 190 F.3d at 199.  Assuming exclusion of the tainted evidence

arguendo, the government's evidence in toto nonetheless implicated Ray in a

widespread conspiracy to distribute drugs.  The court concludes that Ray would not

be acquitted of conspiracy at a new trial.  Therefore, there is no basis for his motion as to the first charge of conspiracy.[1]

### B.    Other Convictions

Ray alleges that the government used tainted evidence to support not only the conspiracy charge, but also the possession with intent to distribute charges (Counts II, IV, VI).  (Doc. 381 at 8).  Ray also avers *passim* that the tainted evidence impacted trial strategy and the ability of counsel to object effectively to tainted evidence, warranting a new trial on all charges.  (See id. at 8, 11; Doc. 419 at 6; Doc. 421 at 8).  The court finds no merit in these sweeping assertions.

---

[1]The court does not hold that the evidence from the Showell traffic stop would necessarily be excluded at a new trial, nor does the court hold as a matter of law that the balance of the untainted evidence could not establish a conspiratorial relationship between Ray and Showell.  Accordingly, the four-level enhancement to Ray's sentencing offense level for organizing or leading a criminal activity that involved five or more participants remains undisturbed.  See U.S.S.G. § 3B1.1(a); (Doc. 337 at 12; see also Doc. 356; Doc. 375 at 3:4-4:15).  Assuming *arguendo* that the new evidence would sever Ray and Showell's co-conspirator status, the sentencing enhancement nevertheless would stand.  The Sentencing Guidelines § 3B1.1(a) instructs a court to enhance a defendant's offense level by four when a preponderance of the evidence establishes that the defendant organized or led criminal activity involving "five or more participants."  U.S.S.G. § 3B1.1(a); United States v. Grier, 475 F.3d 556, 568 (3d Cir. 2007).  Ray himself is included as a participant for purposes of the § 3B1.1(a) calculus.  See United States v. Helbling, 209 F.3d 226, 244 (3d Cir. 2000) (citing United States v. Colletti, 984 F.2d 1339, 1346 (3d Cir. 1992)).  Even if Showell was excluded as a participant, the untainted record evidence nonetheless establishes that *at least* four other participants were involved in Ray's drug trafficking conspiracy.  The court's principal analysis *sub judice* discusses two such participants at length:  Bobb and Breon.  But the record also reveals considerable participation by Lansberry, who bought drugs from Ray and aided in the group's distribution efforts by renting cars for couriering, (Doc. 307 at 139:17-142:12), and Katy McKinley, who bought drugs from Bobb and acted as his driver during several drug transactions.  (Id. at 118:11-118:25, 119:1-123:16).  Consequently, Ray's four-level enhancement stands.

If certain of the jury's findings are not disturbed, then there is no need for a new trial on those findings.  <u>United States v. Boffa</u>, 688 F.2d 919, 939 (3d Cir. 1982).  The evidence introduced to support Counts II, IV, V, VI, and VII[2] at trial was entirely separate from the tainted evidence obtained after the Showell traffic stop.  For the charges of possession with intent to distribute heroin, cocaine, and cocaine base (Counts II, IV), the government relied solely on testimony from Bobb, Breon, and Lansberry.  (<u>See</u>, <u>eg.</u>, Doc. 306 at 36:1-38:7, 47:2-25; Doc. 307 at 136:21-141:5, 208:1-209:9).  The government provided physical evidence obtained during the legal traffic stop of Ray for the third charge of possession with intent to distribute (Count VI).  (Doc. 307 at 48:3-9, 66:21-69:1).  The government supported Count V, carrying a .45 caliber Colt firearm in furtherance of a drug trafficking offense with only Bobb and Breon's testimony.  (Doc. 306 at 51:9-55:21, 66:19-17:1, 100:5-101:6; Doc. 307 at 200:9-202:10).  Finally, the government proved the last charge, conspiracy to possess a firearm in furtherance of the distribution of heroin, cocaine, and cocaine base (Count VII), with only the testimony of Bobb, Officer Mearkle, Officer Flythe, and Officer Fidler.  (Doc. 306 at 62:24-70:12; Doc. 307 at 7:8-16:6, 32:5-37:14, 57:9-63:18).

The tainted evidence was not offered to support any of these charges.  The court finds that there is no newly discovered evidence pertaining to Ray's conviction on Counts II, IV, V, VI, and VII and therefore no basis for a new trial thereon.

---

[2] As Count III was withdrawn by the government at sentencing, the court will not discuss it here.  (Doc. 381 at 2 n.1; Doc. 387-2 at 11 n.6).

**IV.**   **Conclusion**

For all the foregoing reasons, Ray's motion (Doc. 380) for a new trial will be

denied.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:   October 4, 2016