## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:12-CR-58** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **FAREED RAY,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

The court sentenced Fareed Ray ("Ray") to 248 months' imprisonment after a jury convicted him of multiple drug charges. Ray now moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. We will deny the motion.

## I.  Factual Background & Procedural History

On February 20, 2013, a grand jury returned a ten-count superseding indictment, charging Ray and three other defendants with various drug charges. The superseding indictment charges Ray with seven counts, as follows:

- Count One: conspiracy to distribute heroin, cocaine, and 28 grams and more of cocaine base, in violation of 21 U.S.C. § 846;

- Counts Two, Four, and Six: possession with intent to distribute and distribution of controlled substances, including heroin, cocaine, and cocaine base, and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2;

- Counts Three and Five: carrying and use of a firearm during and in relation to and in furtherance of a drug trafficking offense, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c) and 2;

- Count Seven: conspiracy to commit a violation of 18 U.S.C. § 924(c), in violation of 18 U.S.C. § 924(o).

The court appointed Attorney Elisabeth Pasqualini, Esquire to represent Ray. Pasqualini represented Ray through the pre-trial, trial, and sentencing phases of the case. Following a four-day trial in May 2015, the jury convicted Ray on each count. In March 2015, the court held a sentencing hearing. During sentencing, the government moved to dismiss Count Three, and the court granted the request. (See Doc. 375, 3/26/15 Sentencing Tr. 3:4-4:19). The court sentenced Ray to a total of 248 months: 188 months on Counts One, Two, Four, Six, and Seven, all to be served concurrently, and 60 months on Count Five to run consecutively to all other terms of imprisonment. (See Doc. 356). Ray filed a timely appeal, and the Third Circuit affirmed the judgment of conviction and sentence. See United States v. Ray, 704 F. App'x 132 (3d Cir. 2017) (nonprecedential).

In October 2018, Ray filed a timely *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (See Doc. 429). The court appointed counsel to represent Ray and scheduled an evidentiary hearing. (See Doc. 476). Ray asserts four grounds for relief. (See Doc. 523). Principally, he contends Pasqualini was ineffective because she labored under a conflict of interest due to her previous interactions with Darrin Matthis, a codefendant and cooperating witness against Ray. Ray asserts Pasqualini failed to fully apprise him of the conflict, he did not adequately waive the conflict, and she failed to apprise the court of the conflict. He also argues Pasqualini rendered ineffective assistance on two fronts during the plea proceedings, claiming Pasqualini's insufficient and inadequate advice resulted in Ray's rejection of the government's plea deals and that Pasqualini failed to review the plea agreements with Ray. Lastly, Ray contends

Pasqualini was ineffective for failing to move for judgment of acquittal on Counts Three and Five, arguing the jury instructions exacerbated an alleged constitutional error of duplicity associated with the Section 924(c) charges. The court convened an evidentiary hearing on May 7, 2021, and May 21, 2021. The parties submitted pre- and post-hearing briefs. (See Docs. 430, 433, 438, 532, 536, 537). Ray's motion is now ripe for disposition.

## II.    Legal Standard

### A.    Section 2255

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. 28 U.S.C. § 2255. Courts may afford relief under Section 2255 on several grounds, including, *inter alia*, "that the sentence was imposed in violation of the Constitution or the laws of the United States." 28 U.S.C. § 2255(a); see also 28 U.S.C. § 2255 Rule 1(a). The statute provides that, as a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The court accepts the truth of the defendant's allegations when reviewing a Section 2255 motion unless those allegations are "clearly frivolous based on the existing record." See United States v. Booth, 432 F.3d 543, 545 (3d Cir. 2005). A court must hold an evidentiary hearing when the motion "allege[s] any facts warranting § 2255 relief that are not clearly resolved by the record." See United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015) (citing Booth, 432 F.3d at 546).

### B.     Ineffective Assistance of Counsel—Deficient Representation

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington.  See Strickland v. Washington, 466 U.S. 668 (1984).  To prevail on such a claim, defendants must demonstrate that (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms; and (2) the deficient representation was prejudicial.  See id. at 678-88.

To determine whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be "highly deferential" toward counsel's conduct.  Strickland, 466 U.S. at 689.  There is a strong presumption that counsel's performance falls within the broad range of reasonable professional assistance.  See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989).  Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance."  See id. at 711 (citing Strickland, 466 U.S. at 689-90).  To satisfy the prejudice prong, the defendant must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding "would have been different."  Strickland, 466 U.S. at 694.  The district court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one.  See id. at 697; see also United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

### C.     Ineffective Assistance of Counsel—Conflict of Interest

Federal courts divide claims for ineffective assistance of counsel under the Sixth Amendment into two categories: (1) claims involving deficient representation,

and (2) claims involving a conflict of interest.  See United States v. Gambino, 788 F.2d 938, 950 (3d Cir. 1986).  Courts apply a limited presumption of prejudice when defense counsel had an "actual conflict of interest."  See Strickland, 466 U.S. at 692. In such instances, courts presume prejudice only if defendants demonstrate that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected [their] lawyer's performance."  See Cuyler v. Sullivan, 446 U.S. 335, 348-50 (1980).  To prove ineffective assistance resulting from a conflict of interest under Cuyler, defendants must show: (1) multiple representation that (2) created an actual conflict of interest that (3) adversely affected the lawyer's performance.  See Simon v. Gov't of Virgin Islands, 929 F.3d 118, 129 (3d Cir. 2019) (citing Sullivan v. Cuyler, 723 F.2d 1077, 1084 (3d Cir. 1983) (citing Cuyler, 446 U.S. at 348))).

## III.   Discussion

Ray submits he was denied effective trial counsel in violation of the Sixth Amendment.  He advances four arguments concerning Pasqualini's purportedly ineffective assistance.  The court will examine Ray's contentions *seriatim*.

### A.   Ground I: Conflict of Interest

Ray asserts Pasqualini labored under a conflict of interest because she previously represented a codefendant and cooperating witness, Matthis.  He claims Pasqualini failed to fully apprise Ray of that conflict, he did not adequately waive such conflict, and Pasqualini did not apprise the court of the conflict.  (See Doc. 532 at 5).

### 1.   *Multiple Representation*

Ray must first establish the existence of multiple representation.  See id.  The Third Circuit has defined multiple representation as "the conflict [that] exists between the interests of one defendant and the interests of other defendants served by the same attorney."  See Gov't of Virgin Islands v. Zepp, 748 F.2d 125, 135 (3d Cir. 1984).  Multiple representation may be either concurrent or successive.  See R. OF PROF'L CONDUCT 1.10.  Multiple concurrent representation occurs when "jointly charged defendants are represented by a single attorney."  See Mickens v. Taylor, 535 U.S. 162, 175 (2002).  On the other hand, multiple successive representation occurs when an attorney previously represented another defendant in a substantially related manner.  See id.

The Pennsylvania Rules of Professional Conduct ("The Rules") provide guidance for counsel's responsibility toward former and prospective clients.  A former client is a person the lawyer previously represented in a matter.  See PA. R. OF PROF'L CONDUCT 1.9(a).  A prospective client is "[a] person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter."  See PA. R. OF PROF'L CONDUCT 1.18(a).  For both types of clients, the Rules allow waivers of conflicts of interest.  See PA. R. OF PROF'L CONDUCT 1.9(b); see also PA. R. OF PROF'L CONDUCT 1.18(d).  For a former client, the Rules generally forbid the lawyer from "representing another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client."  See PA. R. OF PROF'L CONDUCT 1.9(b).  However, the former client may give informed consent and waive the conflict.  See id.  For a prospective client,

the Rules state that a lawyer who has learned information from a prospective client shall not thereafter "represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter." See PA. R. OF PROF'L CONDUCT 1.18(c). Similarly, this conflict can be waived by informed consent. See PA. R. OF PROF'L CONDUCT 1.18(d). However, the Rules require that both the affected client and the prospective client give informed consent. See id.

In the matter *sub judice*, Matthis and Ray were codefendants. (See 5/7/21 Tr. 7:10-21).[1] Pasqualini had a prior, professional interaction with Matthis. (See id. at 7:22-25). Pasqualini testified Matthis and Ray were both initially charged with state criminal offenses. (See id. at 8:1-5). Matthis's family contacted Pasqualini and asked her to meet with Matthis and discuss the case. (See id. at 8:5-7). Pasqualini did not represent Matthis at the state level, but she met with Matthis in February 2012 to discuss how he could help himself by cooperating against other codefendants in the case. (See id. at 8:8-9:12, 13:1-22; see also Doc. 526-1, Def. Ex. 1 ¶¶ 2-6). That same month, Pasqualini arranged a proffer meeting between Matthis and law enforcement. (See 5/7/21 Tr. 10:10-17). Ultimately, another attorney represented Matthis in state court, and Pasqualini never entered an appearance on behalf of Matthis. (See id. at 14:9-15). This court appointed Pasqualini to represent Ray in federal court in August 2013. (See id. at 14:16-19).

---

[1] Citations to the evidentiary hearing transcripts are abbreviated as "5/7/21 Tr. __" and "5/21/21 Tr. __." The court cites to the hearing exhibits as "Def. Ex. __." The court finds the testimony of Elisabeth Pasqualini, Esquire, to be highly credible.

Given these facts, we conclude Matthis's interactions with Pasqualini constituted either a former client or a prospective client relationship because Pasqualini did not represent Matthis and Ray at the same time.  See Pa. R. of Prof'l Conduct 1.9; see also Pa. R. of Prof'l Conduct 1.18.  Pasqualini interacted with Matthis in February 2012 and was appointed to represent Ray in May 2013.  (See Doc. 526-1, Def. Ex. 1 ¶¶ 2-6).  We also find Matthis was a prospective rather than former client under the Rules.  See Pa. R. of Prof'l Conduct 1.18.  In February 2012, Matthis consulted Pasqualini about the possibility of forming a client-lawyer relationship, and they discussed his case.  (See 5/7/21 Tr. 8:5-21).  But Pasqualini's involvement with Matthis was limited: she neither entered an appearance on his behalf nor represented him in further proceedings.  (See id. at 13:23-14:15).  In sum, there was multiple successive representation—Matthis was Pasqualini's prospective client, and Ray was Pasqualini's current client.

Having established multiple representation by Pasqualini, we now consider whether a valid waiver occurred.  The Rules define informed consent as "consent by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct."  See Pa. R. of Prof'l Conduct 1.0(e).  Informed consent need not be in writing unless the Rules state the informed consent must be "confirmed in writing."  See id.  Rule 1.18 governing prospective clients requires informed consent from both the affected client and prospective client but does not require consent to be confirmed in writing.  See Pa. R. of Prof'l Conduct 1.18(d).

Upon beginning her representation of Ray, Pasqualini spoke with Matthis's appointed counsel about a potential conflict.  (See 5/7/21 Tr. 16:2-18, 64:6-65:4).  Matthis's appointed counsel reported that Matthis waived any conflict.  (See id. at 16:19-17:2, 64:21-65:17).  After obtaining a verbal waiver from Matthis through his appointed counsel, Pasqualini spoke with Ray about the conflict.  (See id. at 17:14-18:13, 65:22-66:9).

Both Ray and Pasqualini testified that Ray previously observed Pasqualini meeting with Matthis at Dauphin County Prison, and that Ray was aware of a potential conflict. (See id. at 17:19-18:8; see also 5/21/21 Tr. 8:5-14).  Nonetheless, Pasqualini knew she needed to obtain waiver from Ray.  (See 5/7/21 Tr. 17:20-22).  Pasqualini testified she met with Ray in prison, and he identified her as the attorney who "represented [Matthis]."  (See id. at 18:4-8).  Pasqualini explained to Ray that she had met with Matthis but did not represent him, and she told Ray he had a right to object to the conflict.  (See id. at 18:9-12).  She also told him that Matthis had waived any conflict.  (See id. at 18:12-13).  Additionally, Pasqualini discussed with Ray the possibility of Matthis cooperating as a witness against him.  (See id. at 23:9-14).  Although she did not obtain written confirmation of the waiver, Pasqualini credibly testified that Ray waived the conflict.  (See id. at 23:21-24:2).  Ray testified the waiver was invalid, but we find Pasqualini's testimony more credible on this point.

In light of these facts, we conclude Pasqualini communicated adequate information to Ray so he could make an informed decision whether to waive the conflict.  The Rules require that when discussing waiver of a conflict with a client,

9

an attorney communicate *adequate* information, not *all* information.  See PA. R. OF
PROF'L CONDUCT 1.0(e).  Moreover, Ray's argument that Pasqualini failed to confirm
the waiver in writing is a nonstarter—the Rules do not require a writing.  We
conclude Pasqualini obtained valid waiver from Ray regarding the conflict.[2]

### 2.   *Actual Conflict of Interest That Had an Adverse Effect on Trial Counsel's Performance*

Waiver "does not necessarily resolve" questions of conflict of interest.  See
United States v. Moscony, 927 F.2d 742, 749 (3d Cir. 1991).  We must consider the
effect of Pasqualini's multiple representation.  Standing alone, "[m]ultiple
representation of co-defendants does not violate the Sixth Amendment *unless* it
gives rise to a conflict of interest."  See Muhammad v. Lane, No. 1:08-CV-1287, 2019
WL 1424614, at *14 (M.D. Pa. Mar. 29, 2019) (Conner, C.J.) (citing Holloway, 435 U.S.
at 482) (emphasis added).  Thus, Ray must prove there was an actual conflict of
interest and that it had an adverse effect on Pasqualini's performance.  See Cuyler,
723 F.2d at 1083.  An actual conflict of interest "is evidenced if, during the course of
the representation, the defendants' interests diverge with respect to a material

---

[2] Ray argues a new trial should be granted because Pasqualini failed to notify
the court of a conflict.  Ray's argument is unpersuasive.  Trial courts rely upon the
good faith and judgment of defense counsel; accordingly, the court may assume
either that multiple representation engenders no conflict or that the attorney and
client knowingly accept the risk of conflict.  See Cuyler, 446 U.S. at 346.  The court
must initiate an inquiry only when it knows or reasonably should know a conflict
exists.  See id.  A reversal is mandated only when defense counsel is forced to
represent codefendants over his timely objection, unless the trial court determines
there is no conflict.  See Mickens, 535 U.S. at 168 (citing Holloway v. Arkansas, 435
U.S. 475, 488 (1978)).  The court did not force Pasqualini to represent codefendants
over a timely objection, so a reversal is not mandated.

factual or legal issue or to a course of action."  See United States v. Gambino, 864

F.2d 1064, 1070 (3d Cir. 1988) (citing Cuyler, 723 F.2d at 1086).  An actual conflict of

interest must be one that "affected counsel's performance" rather than a "mere

theoretical division of loyalties."  See Mickens, 535 U.S. at 171; Muhammad, 2019

WL 1424614, at *15.[3]

      To meet this standard, a defendant who claims his attorney failed to act in

some way must show: "(1) a plausible, alternative defense strategy or tactic might

have been pursued that is of sufficient substance to be viable; and (2) the alternative

defense was inherently in conflict with or not undertaken because of the attorney's

other loyalty or interest."  See Tillery v. Horn, 142 F. App'x. 66, 70 (3d Cir. 2005)

(nonprecedential) (citing Gambino, 864 F.2d at 1070); see also Morelli, 169 F.3d at

810.  This test combines both the actual conflict and adverse effect prongs of the

conflict-of-interest analysis.  See Gambino, 864 F.2d at 1071.

      Defendants may establish a plausible alternative defense strategy by showing

that the attorney "failed to pursue an alternative strategy that could benefit the

instant defendant and would violate the attorney's duties to the other client."  See

Simon, 929 F.3d at 130.  To meet the "sufficient substance to be viable" standard,

defendants need not show that the alternative defense strategy would have been

---

      [3] An actual conflict of interest is more likely to exist in two cases: (1) when "an attorney takes positive steps on behalf of one client prejudicial to another," as opposed to cases when "the attorney's actions are based on inaction and are passive"; and (2) when an attorney represents "more than one defendant at the same trial."  See United States v. Morelli, 169 F.3d 798, 810 (3d. Cir 1999) (citing Gambino, 864 F.2d at 1070).  Neither of these situations exists here.

successful if used.  See id. at 1070.  Defendants must also show that this plausible alternative conflicted with the attorney's other loyalty.  See Tillery, 142 F. App'x. at 70.  Under this prong, the Rules state that "a lawyer who has learned information from a prospective client shall not use or reveal information which may be significantly harmful to that person."  See PA. R. OF PROF'L CONDUCT 1.18.  A lawyer's duties toward a prospective client are less stringent than her duties toward a former client.  Compare PA. R. OF PROF'L CONDUCT 1.18, with PA. R. OF PROF'L CONDUCT 1.9.  Attorneys have a duty not to use or reveal information they learn from prospective clients which may be *significantly harmful* to the prospective client.  See PA. R. OF PROF'L CONDUCT 1.18.

In the matter *sub judice*, Ray avers that as an alternative defense strategy, Pasqualini could have called Matthis to testify as a witness during Ray's case-in-chief.  (See Doc. 532 at 9-10).  Ray argues that "because of [Pasqualini's] ongoing duty of loyalty to her former client, [she] could not engage in any strategy of using Matthis to Ray's benefit at trial, includ[ing] calling Matthis as a witness, pursuing a theory incriminating Matthis, or even challenging Matthis's credibility if called as a government witness."  (See Doc. 537 at 2-3).

Ray may establish a plausible alternative defense strategy by showing Pasqualini "failed to pursue an alternative strategy" that could benefit Ray while violating Pasqualini's duties to Matthis.  See Simon, 929 F.3d at 130.  However, Ray fails to make this showing.  As an initial matter, Ray mistakenly asserts Matthis was a former client.  (See Doc. 532, at 7 n. 7).  As we have established, Matthis was a prospective client.  Thus, under the lesser duty afforded to potential clients,

Pasqualini only had a duty not to use or reveal information she learned from Matthis which may have been significantly harmful to him.  <u>See</u> PA. R. OF PROF'L CONDUCT 1.18.

More substantively, however, Ray ignores that Matthis's proffer interviews with law enforcement seriously incriminated Ray, as Matthis provided details regarding Ray's drug-distribution activities.  (<u>See</u> Doc. 526-4, Def. Ex. 4 at 1; Doc 526-5, Def. Ex. 5 at 1, 2).  Ray speculates broadly that Pasqualini was unable to call Matthis as a witness and question him "regarding exculpatory statements he made" during proffer interviews.  (<u>See</u> Doc. 532 at 10).  But Ray does not explain, and it is entirely unclear, what those exculpatory statements were, or why such a strategy had "sufficient substance to be viable."  <u>Cf.</u> <u>Tillery</u>, 142 F. App'x at 70-71 (no conflict of interest for trial counsel when defendant merely demonstrated attorney who successively represented "two clients with possibly diverging interests").  To the contrary, a defense attorney calling a cooperating codefendant who has provided only incriminating information about the defendant on trial could very well lead to a <u>Strickland</u> claim for ineffective assistance.  Moreover, Pasqualini credibly testified that she did not "make any decision or refrain from [t]aking any action" due to her concern about her "prior contact with Darrin Matthis."  (<u>See</u> 5/7/21 Tr. 81:16-23). The record lacks any indication that calling Matthis as a witness constitutes an alternative strategy with "sufficient substance to be viable" that Pasqualini failed to pursue.  <u>See</u> <u>Tillery v. Horn</u>, 142 F. App'x. at 70; <u>Simon</u>, 929 F.3d at 130.  And while Ray also argues Pasqualini could not have challenged Matthis's credibility if called as a government witness, (<u>see</u> Doc. 537 at 2-3), Ray acknowledged during the

evidentiary hearing that the government did not call Matthis as a witness to prove

its case against him, and the opportunity to challenge Matthis's credibility simply

never arose, (see 5/21/21 Tr. 45:15-21).  At bottom, Ray has demonstrated only a

"theoretical division of loyalties" and has failed to carry his burden to show that an

actual conflict of interest adversely affected Pasqualini's performance.  Cf. Mickens,

535 U.S. at 171.  The court will deny Ray's motion on this ground.

> **B.    Grounds II and III: Ineffective Assistance During Plea Negotiations**

Ray next asserts Pasqualini was ineffective during the plea proceedings,

when her insufficient and inadequate advice resulted in Ray rejecting the

government's plea offer.  (See Doc. 532 at 14).  Ray also alleges Pasqualini was

ineffective for failing to review the plea agreements with him.  (See id. at 17).

Because these grounds contain significant overlap regarding Ray's plea

negotiations, we review them together.

To show that Pasqualini was ineffective during plea negotiations, Ray must

prove: (1) counsel's representation fell below an objective level of reasonableness

based on prevailing professional norms; and (2) the deficient representation was

prejudicial.  See Strickland, 466 U.S. at 687-88.  "Objectively reasonable

representation requires that counsel provide a defendant with enough information

to make a reasonably informed decision whether to accept a plea offer."  See

Herrera-Genao v. United States, 641 F. App'x. 190, 192 (3d Cir. 2016)

(nonprecedential) (citing United States v. Dung Bui, 795 F.3d 363, 367 (3d Cir.

2015)).  A defendant may show prejudice if, "due to counsel's deficient advice, the

defendant lost an opportunity to accept a plea agreement and trial led to a more severe sentence." See id.

Pasqualini testified that she reviewed Ray's plea agreements with him paragraph-by-paragraph. (See 5/7/21 Tr. 31:5-8, 32:3-7). She stated Ray was very involved in his defense and read documents multiple times. (See id. at 32:7-9). Pasqualini spoke with Ray about the advantages of entering a plea, and she explained both the advantages and disadvantages of going to trial and accepting a plea deal. (See id. at 32:10-15, 72:9-74:3). She also discussed with Ray the likelihood that if he went to trial and lost, his sentence would be different than had he taken a plea. (See id. at 33:1-4, 82:8-83:8). We acknowledge that Ray's version of the events differs from Pasqualini's version of the events, as Ray testified that Pasqualini never reviewed either of the plea agreements with him and he never read either of the agreements. (See 5/21/21 Tr. 14:13-23, 18:16-23). Based on the robust testimony Pasqualini provided as to the review of the plea agreements, we find Pasqualini's testimony far more credible. Ray's claim—that Pasqualini failed to review the plea agreements with Ray and provide sufficient and adequate advice—is simply not a credible version of events.

On the present record, we conclude that Pasqualini provided Ray with adequate information "to make a reasonably informed decision whether to accept a plea offer." See Herrera-Genao, 641 F. App'x. at 192. Pasqualini's advice to Ray about the plea agreements was therefore not constitutionally infirm. See Strickland, 466 U.S. at 687-88. The court will deny Ray's motion on these grounds.

## C.    Ground IV: Failure to Move for Judgment of Acquittal as to Duplicity

Ray's final assertion is that Pasqualini was ineffective for failing to move for judgment of acquittal on Counts Three and Five.  (See Doc. 532 at 18).  According to Ray, Pasqualini should have objected to the court's jury instructions, which allegedly "exacerbated the constitutional error of duplicity" associated with the Section 924(c) charges found in Counts Three and Five.  (See id.)  Ray claims Section 924(c) criminalizes two separate offenses: (1) using or carrying a firearm "during and in relation to" a drug trafficking crime; or (2) possessing a firearm "in furtherance of" a drug trafficking crime.  (See id.)  The superseding indictment charges Ray in the conjunctive with both prongs of the offense.  (See Doc. 107 at 6).  Ray avers it is impossible to tell whether the jury reached a unanimous verdict on the Section 924(c) charges due to impermissible duplicity.  (See Doc. 532 at 19).  The court dismissed Count Three at sentencing, so Ray can attempt to establish prejudice only as to Count Five.  (See Sentencing Tr. 3:4-4:19).

Duplicity is the improper joinder of distinct and separate offenses in a single count, and an impermissibly duplicitous count is properly subject to dismissal.  See United States v. Rigas, 605 F.3d 194, 210 (3d Cir. 2010) (citing United States v. Haddy, 134 F.3d 542, 548 (3d Cir. 1998)).  As the Third Circuit Court of Appeals has observed, duplicitous charges raise a number of concerns: they may conceal the specific charges against a defendant, prevent the jury from unanimously deciding guilt or innocence with respect to a particular offense, or endanger fair sentencing.

16

See <u>United States v. Moyer</u>, 674 F.3d 192, 205 (3d Cir. 2012) (citing <u>United States v. Root</u>, 585 F.3d 145, 154 (3d Cir. 2009)).

The Third Circuit has explained that duplicity should be "invoked only when an indictment affects the policy considerations that underlie the doctrine." <u>See Root</u>, 585 F.3d at 155 (citation omitted).  In other words, a charge "should not be found impermissibly duplicitous whenever it contains several allegations that could have been stated as separate offenses, but only when the failure to do so risks unfairness to the defendant." <u>See id.</u> (citations omitted). To prevail on this ground, Ray must establish both impermissible duplicity and prejudice flowing therefrom. <u>See</u> <u>United States v. Bonner</u>, No. 1:09-CR-72, 2014 WL 5795601, at *5 (M.D. Pa. Nov. 6, 2014) (Conner, C.J.).

Section 924(c)(1)(A) sets out alternative bases of liability: (1) use or carrying of a firearm during and in relation to any crime of violence or drug trafficking crime; and (2) possession of a firearm in furtherance of any crime of violence or drug trafficking crime.  <u>See</u> 18 U.S.C. § 924(c)(1)(A).  The circuit courts disagree on whether Section 924(c) codifies two separate offenses or one offense with two means of committing the offense.  <u>Compare</u> <u>United States v. Lloyd</u>, 462 F.3d 510 (6th Cir. 2006) (two offenses), <u>with</u> <u>United States v. Arreola</u>, 467 F.3d 1153 (9th Cir. 2006) (one offense).  The Third Circuit has not ruled on this issue in a precedential opinion. <u>See</u> <u>United States v. Scott</u>, 463 F. App'x 85, 89 (3d Cir. 2012) (nonprecedential) (acknowledging circuit split).  Our court of appeals has stated, however, that "Section 924(c) has two separate prongs, the violation of either standing alone is sufficient to support a conviction." <u>See</u> <u>United States v. Burnett</u>, 773 F.3d 122, 134

(3d Cir. 2014).  Furthermore, when an indictment charges conduct in conjunctive language, the court's jury instructions may properly employ disjunctive language used by the statute.  See United States v. Johnson, 452 F. App'x 219, 225 (3d Cir. 2011) (nonprecedential) (citing United States v. Cusumano, 943 F.2d 305, 311 (3d Cir. 1991)) (no plain error when indictment alleged Section 924(c) charge in the conjunctive, but district court charged jury in the disjunctive).

In the matter *sub judice*, Ray offers no meaningful argument establishing that Count Five, which charges him with "using or carrying a firearm during and in relation to a drug trafficking offense" as well as "possessing a firearm in furtherance of a drug trafficking offense" is itself impermissibly duplicitous.  The Third Circuit has not held that Section 924(c) contemplates two offenses, but instead that a violation of either "prong" is sufficient to support a conviction.  See Burnett, 773 F.3d at 134.  Without a decision from our court of appeals adopting the two-offense theory, we decline Ray's invitation to declare that Section 924(c) encompasses separate offenses.

Even if we were to find impermissible duplicity in the superseding indictment, Ray cannot establish that it resulted in prejudice.  Cf. Root, 585 F.3d at 155.  Assuming *arguendo* that Section 924(c) codifies two separate offenses, the court explicitly instructed the jury "in the alternative" on Section 924.  (See Doc. 370, Trial Tr. 147:3-9).  We explained to the jury that the government alleged Ray violated Section 924(c) "in one of two ways," stating Ray could have been convicted for "possessing a firearm in furtherance of a drug trafficking crime," *or* "by carrying or using a firearm during and in relation to a drug trafficking crime."  (See id. at

147:18-148:5). We provided disjunctive instructions, labeling the alternatives "Option 1" and "Option 2." (See id. at 148:6-7, 149:11-12). The verdict form also uses disjunctive language for Count 5. (See Doc. 274 at 4).

In sum, the superseding indictment was not impermissibly duplicitous pursuant to Third Circuit precedent. See Scott, 463 F. App'x at 89. Even assuming duplicity, Ray has failed to establish prejudice because the court's disjunctive instructions properly instructed the jury on the alternative bases for liability. See Johnson, 452 F. App'x at 225. As a result, any Rule 29 motion Pasquallini could have raised regarding Count Five would have been denied, and Ray thus cannot demonstrate that her failure to so move was deficient or prejudicial. Cf. Strickland, 466 U.S. at 678-88. The court will deny Ray's motion on this ground.

## IV.   Conclusion

We will deny Ray's motion (Doc. 429) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania


Dated:    May 6, 2022